-PSO-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL F. RAMSEY,

Plaintiff,

-v-

GLENN S. GOORD, DONALD SELSKY,
MR. RYERSON, THOMAS G. EAGEN,
JOHN H. NUTTALL, MICHAEL MCGINNIS,
PAUL CHAPIUS, A. BARTLETT,
M. SHEAHAN, J. IRIZARRY, J. HALE,
J. CIESLAK, SGT. LITWILDER, J. AMES,
C.O. CLARK, C.O. HELD, and P. KLATT,

Defendants.

---

**DECISION and ORDER**
05-CV-47A

## INTRODUCTION

Plaintiff, an inmate formerly incarcerated at the Elmira and Southport Correctional

Facilities (hereinafter "Elmira" and "Southport"), has brought this action pursuant to 42

U.S.C. § 1983, and seeks permission to proceed *in forma pauperis* pursuant to 28 U.S.C.

§ 1915.  Plaintiff's complaint sets forth five claims alleging violations of his constitutional

and statutory rights.  The first and second claims set forth in the complaint relate to a July,

2002 administrative hearing that was conducted on disciplinary charges brought against

him during his sojourn at Elmira, and principally allege a violation of plaintiff's due process

rights.  Plaintiff's third and fourth claims allege violations of his right to practice his

religious beliefs by correctional employees and supervisory personnel at Southport

between February, 2004 and January, 2005.  Plaintiff's fifth claim asserts that prison

officials at Southport interfered with his First and Fourteenth Amendment rights when they deprived him of paper and other materials necessary to his prosecution of legal actions that he had previously filed. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages with respect to each claim.

Plaintiff's application to proceed *in forma pauperis* is granted. For the reasons set forth below, several of plaintiff's claims are now dismissed pursuant to 28 U.S.C. §§ (e)(2)(B) and 1915(A), and service by the U.S. Marshal is directed with respect to the remaining claims.

## DISCUSSION

Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if the Court determines that the action: (I) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. In addition, 28 U.S.C. § 1915A(a) requires the Court to conduct an initial screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.*, regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915.

In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See* King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "This rule applies with particular force where the

2

plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  Based on its evaluation of the amended complaint, the Court finds that several of plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) because they fail to state a claim upon which relief may be granted.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  "To state a valid claim under 42 U.S.C. §§ 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Whalen v. County of Fulton, 126 F.3d 400, 405 (2d. Cir. 1997) (citing Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir.1994)).  In addition, a prerequisite for liability under § 1983 is "personal involvement" by the defendants in the alleged constitutional deprivation. Spencer v. Doe, 139 F.3d 107, 112  (2d Cir. 1998).

### 1. Claims Relating to July, 2002 Disciplinary Hearing (First and Second Claims)

#### (a) Due Process

The first claim of plaintiff's complaint alleges that he was deprived of his procedural due process rights during a disciplinary hearing conducted before defendant Ryerson, a hearing officer at Elmira, which resulted on July 24, 2002 in the determination of guilt with respect to the charges brought against plaintiff, and the imposition of six moths punitive confinement with six months loss of good time and privileges. (Compl. pp. 4-5). Specifically, plaintiff claims that he was denied the following due process rights at the hearing: the right to call witnesses; the right to employee assistance; the right to hear and

respond to the evidence against him; and the right to have the hearing electronically recorded. (Compl. p. 5). He asserts that defendants Selsky and Goord further violated his due process rights when they denied his appeal of Ryerson's determination.

Plaintiff's second claim also relates to the July, 2002 disciplinary hearing, and alleges that defendant Goord, Commissioner of the New York State Department of Correctional Services ("DOCS") ordered defendant Selsky, Director of the Special Housing Program for DOCS, to deny plaintiff's appeal of the July 24, 2002 disciplinary determination in retaliation for a complaint plaintiff had sent to Goord with respect to Goord's treatment of him. The complaint further alleges that following the denial of plaintiff's appeal of the July 24, 2002 determination by defendant Selsky, he sent a complaint to defendant Goord repeating the "blatant due process violations" that had allegedly been committed by defendant Ryerson during the disciplinary hearing, and alleging that Goord and Selsky's refusal to reverse Ryerson's determination was done for the purpose of retaliating against him for the complaint he had filed against Goord. Following plaintiff's receipt of a letter from defendant Selsky informing him that no further action would be taken with respect to plaintiff's appeal of the disciplinary determination, plaintiff states that he filed an Article 78 petition in New York State Supreme Court challenging defendant Ryerson's determination. He alleges that after unnecessarily delaying the Article 78 proceeding for the purpose of prolonging plaintiff's stay in punitive confinement, defendant Goord administratively reversed defendant Ryerson's determination and then moved successfully to dismiss plaintiff's petition as moot. (Compl. pp. 3, 6-7).

4

It is well settled that when a litigant makes a constitutional challenge to a determination which affects the overall length of his imprisonment, the "sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Moreover, an inmate cannot use § 1983 to recover damages where "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction," Heck v. Humphrey, 512 U.S. 477(1994), and a § 1983 cannot lie "unless . . . the conviction or sentence has already been invalidated" on direct appeal or by a habeas corpus petition. Id. at 487.  The Supreme Court further held in Edwards v. Balisok, 520 U.S. 641, 646 (1997), that habeas was the sole mechanism for an inmate's constitutional challenge to a prison disciplinary hearing which led to a revocation of the inmate's accrued good-time credits because the "principal procedural defect complained of," namely deceit and bias on the part of the disciplinary hearing officer, "would, if established, necessarily imply the invalidity of the deprivation [the inmate's] good-time credits."

While the determination that forms the gravamen of plaintiff's complaint in the instant matter did affect the overall length of his imprisonment to the extent that it imposed a loss of six months good time, his complaint is not barred under Preiser and Heck because plaintiff demonstrates that it was administratively reversed following his commencement of an Article 78 proceeding in New York State Supreme Court.[1] See, e.g., Odom v. Pataki, 00 Civ. 3727, 2001 U.S. Dist. LEXIS 2790, at *7-8 (S.D.N.Y. 2001) ("[A]n

---

[1]Plaintiff attaches to his complaint documentation from the New York State Department of Correctional Services and the New York State Attorney General's Office which supports his claim that the July 24, 2002 disciplinary hearing determination was reversed, with all references to that determination expunged from plaintiff's record.

inmate may not assert a damages claim under § 1983 that attacks the fact or length of the inmate's confinement without first showing that the conviction has been reversed or otherwise invalidated.").

In determining whether plaintiff's first and second claims can go forward, the Court must also examine whether plaintiff has alleged the deprivation of a liberty interest that is entitled to constitutional protection.  The administrative reversal of the July 24, 2002 disciplinary determination, and the expungement of that determination from plaintiff record, does not render plaintiff's due process claim non-justiciable, for plaintiff alleges that he served 121 days in "punitive confinement" prior to such reversal, during which he was handcuffed, chained and shackled whenever permitted to leave his cell.[2]  (Compl. p. 5).

In Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the Supreme Court ruled that the Constitution did not require that restrictive confinement within a prison be preceded by procedural due process protections unless the confinement subjected the prisoner to "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 115 S. Ct. at 2300.[3]  "Discipline by prison officials in response to a wide range of misconduct falls within the expected

---

[2]The Court's determination that plaintiff served 121 days in punitive confinement is based upon the plaintiff's allegation that he was sentenced to six months of such confinement on July 24, 2002, and that his sentence was administratively reversed on November 22, 2002, pursuant to a Memorandum issued on the latter date by the Director of Special Housing/Inmate Discipline of the New York State DOCS, a copy of which is attached to the complaint.

[3]Sandin compared inmates in the SHU for disciplinary purposes to inmates in both the general inmate population and those in administrative segregation and protective custody. 515 U.S. at 485-86, 115 S. Ct. at 2301. Based on that comparison, the Court held that the plaintiff's 30-day SHU punishment did not "work a major disruption in his environment," id. at 486, 115 S.Ct. at 2301, and was "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." Id. at 487, 115 S.Ct. at 2302.

parameters of the sentence impose by a court of law," 515 U.S. at 485, 115 S. Ct. at 2301, and it is only where the prisoner's conditions of disciplinary confinement become an atypical and significant hardship based on a liberty interest created by state law that federal due process standards must be met. See Miller v. Selsky, 111 F.3d 7, 9 (2d Cir. 1997) (holding that, while Sandin did not create a per se rule that disciplinary confinement may never implicate a liberty interest, where a prisoner fails to show the conditions to which he was subjected were "atypical and significant," summary judgment may nevertheless be granted).

Thus, in order to allege a cognizable due process claim, a § 1983 plaintiff must show that the "conditions of his [disciplinary] confinement . . . were dramatically different from the basic conditions of [his] indeterminate sentence." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996). In determining whether a prisoner has a liberty interest in remaining free from segregated confinement, district courts must make factual findings with respect to the alleged conditions of the confinement and the issue of its atypicality. See, e.g., Welch v. Bartlett, 196 F.3d 389, 393-95 (2d Cir. 1999); Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998); Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir. 1997); Miller, 111 F.3d at 8-9; Sealey v. Giltner, 116 F.3d 47, 52 (2d Cir. 1997). Several factors should be considered when assessing whether the particular restrictions imposed on the prisoner are atypical and significant, including: (1) the effect of the segregation on the length of the plaintiff's prison confinement; (2) the extent to which the conditions at issue differ from other routine prison conditions; and (3) the duration of the prisoner's disciplinary

confinement compared to the potential duration a prisoner may experience while in discretionary confinement. Wright, 132 F.3d at 136.

In terms of the period of the number of days of punitive or other special confinement that will be regarded as sufficient implicate a prisoner's liberty interest, our Court of Appeals has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004). Instead, the Court of Appeals have established guidelines to be used by district courts in determining whether a prisoner's liberty interest has been infringed. Id. Pursuant to these guidelines, the Court has ruled that where a prisoner has been confined for what it has termed an "intermediate duration," defined as between 101 and 305 days, the district court is required to develop a "'detailed record' of the conditions of confinement relative to ordinary prison conditions." Id. at 65 (quoting Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000)). The Court in Palmer further instructed that in a case involving an intermediate term of confinement, the district court must examine the "actual circumstances" of SHU confinement "without relying on its familiarity with SHU conditions in previous cases." Id. (citing Kalwasinski v. Morse, 201 F.3d 103, 106 (2d Cir. 1999)).

In the instant case, plaintiff alleges that he was maintained in keeplock for 121 days, during which time he further alleges that he was subject to restraint by handcuffs, chains and shackles whenever he was allowed to leave his cell. It is not possible, based upon the allegations set forth in the complaint, for the Court to determine whether the conditions under which plaintiff was maintained were atypical within the meaning of Sandin. In light of the Second Circuit's directive that the district court must develop a detailed record

8

concerning the nature of confinement conditions "where special confinement exceeds 101 days or there is any other indication of atypicality," Harris v. McGinnis, No. 02 Civ. 6481, 2004 U.S. Dist. Lexis 19500, at *14 (S.D.N.Y. 2004), the Court concludes that the complaint sufficiently alleges that plaintiff was deprived of a liberty interest.

To state a due process claim, plaintiff must also allege that the defendants "deprived him of [a liberty] interest as a result of insufficient process." Ortiz v. McBride, 380 F.3d 649, 654.    Under the Fourteenth Amendment, the procedural protections required when the length or conditions of confinement implicate due process protections: "advance notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004) (citing Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999)). In light of the plaintiff's allegations, noted above,  concerning how his due process rights were infringed at the July 24, 2002 hearing, and given the Court's duty to construe liberally the pleadings of *pro se* plaintiffs, the Court determines that the plaintiff's first and second claims sufficiently allege that his liberty interest was deprived as a result of insufficient process.[4]

There remains, however, the question of whether plaintiff has alleged sufficient involvement by defendants Ryerson, Goord and Selsky in the claimed deprivation of his

---

[4]The Court notes that while plaintiff does specify in his complaint the precise nature of the alleged deprivation of due process that occurred at the July 24, 2002 hearing, the complaint is pretty thin in terms of allegations of specific facts showing precisely how plaintiff's due process rights were interfered with. The Court's decision to allow plaintiff's due process claims to proceed despite the sparseness of his factual allegations stems from the fact that the administrative reversal of the hearing determination is stated to have been based upon error by the hearing officer. (DOCS Memorandum 11/22/02 attached to complaint).

due process rights.   A prerequisite for liability under a § 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation.  Spencer v. Doe, 139 F.3d 107, 112  (2d Cir. 1998).  Under this requirement, there may be liability if:

> (1) the defendant participated directly in the alleged constitutional violation; or (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which the unconstitutional practices occurred or allowed the continuance of such policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal.  Montero v. Travis, 171 F.3d 757, 761-62 (2d. Cir. 1999) (citing Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997)); *see* Neitzke v. Williams, 490 U.S. 319, 323 n. 2 (1989).

Plaintiff's due process claim against defendant Ryerson stems from Ryerson's role as the hearing officer at the hearing which concluded on July 22, 2002, and the Court finds that Ryerson's alleged role in presiding over the hearing is sufficient to allege personal involvement.  Accordingly, plaintiff's first claim, alleging deprivation of due process, will be allowed to go forward against defendant Ryerson.

The Court's determination is different, however, with respect to plaintiff's due process claims against  defendants Selsky and Goord.  Plaintiff alleges in his first claim that he appealed Ryerson's disciplinary determination to Goord, and that defendant Selsky

10

responded on Goord's behalf, advising him that his appeal was denied.  In his second claim he further alleges that he sent two letters to defendant Goord complaining about the treatment to which he had been subjected at the disciplinary hearing.  Once again responding on behalf of Commissioner Goord, defendant Selsky advised plaintiff that no further action would be taken by Selsky or Goord with respect to plaintiff's complaint about his treatment at the hearing.  (Compl. pp. 6-7).  Plaintiff's allegations are not sufficient to allege personal involvement by defendants Selsky and Goord with respect to plaintiff's due process claims.[5]

It is well-established that "mere linkage in the prison chain of command" is not sufficient to support a claim of personal involvement.  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1995); see also Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995) ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [plaintiff's] claim.").  Moreover, the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS "chain of command," affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part.  Page v. Breslin, 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at *21-22 (E.D.N.Y. 2004); Foreman v. Goord, 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at *21-22 (S.D.N.Y. 2004).  In addition, the fact that defendant Goord apparently referred plaintiff's appeal and letter-complaints to defendant Selsky for resolution is not enough to establish personal

---

[5]While plaintiff alleges that defendant Goord ordered defendant Selsky to deny plaintiff's appeal as a means of punishing and retaliating against plaintiff for having complained to Goord, plaintiff alleges no facts that would support this allegation and it is not self-evident how plaintiff would have been in a position to know that Goord "ordered" Selsky to punish and retaliate against plaintiff.  Plaintiff similarly alleges no facts to support his claim that Goord requested "lengthy delays and unnecessary extensions" in responding to plaintiff's Article 78 complaint.

involvement on the part of Goord. See Lunney v. Brureton, 04 Civ. 2438, 2005 U.S. Dist. LEXIS 770, at *45-46 (S.D.N.Y. 2005) (citing Sealy v. Giltner, 116 F.3d 47, 51 (2d cir. 1997)) ("[S]ubmitting an appeal or complaint to a subordinate for disposition is not sufficient to find personal involvement."). The Court therefore determines that plaintiff's due process claims against defendants Selsky and Goord must be dismissed.

(b) Malicious Prosecution, First Amendment, Equal Protection

In addition to his due process arguments, plaintiff's first and second claims set forth additional bases for his challenges to the disciplinary proceeding concluded on July 24, 2002. He alleges that he was the victim of malicious prosecution, and that defendants Selsky and Goord's initial refusal to reverse the disciplinary determination stemmed from their decision to retaliate against plaintiff for complaining about their treatment of him, thereby violating his First Amendment rights. Plaintiff also invokes the equal protection clause.

Plaintiff fails to specifically indicate which actions of the defendants are alleged to constitute "malicious prosecution." However, based upon the factual recitals set forth in his statement of his first and second claims, it would appear that plaintiff is contending that the refusal of defendants Selsky and Goord to reverse defendant Ryerson's determination on appeal until after plaintiff had commenced an Article 78 proceeding with respect to that determination constituted "malicious prosecution."

"To prevail on a malicious prosecution claim under either New York law or § 1983, a plaintiff must show that the defendant maliciously commenced or continued against the plaintiff a criminal proceeding that ended in the plaintiff's favor, and that there was no

12

probable cause for the proceeding." Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996) (citing Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991)).  Further, only those claims of malicious prosecution that implicate Fourth Amendment rights can be appropriate bases for malicious prosecution claims brought under § 1983.  Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) (citing Albright v. Oliver, 510 U.S. 266, 274-75 (1994).  A claim for malicious prosecution under § 1983 may not be premised on an administrative disciplinary proceeding, at least in the absence of a claim of a violation of Fourth Amendment rights. Id. at 315.

The disciplinary proceeding challenged by plaintiff in the instant matter was not a criminal prosecution, see Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution...."), and plaintiff alleges no violation of Fourth Amendment rights.  Accordingly, to the extent the first and second claims in the complaint are based upon the defendants' alleged malicious prosecution of him, they must be dismissed.

Plaintiff's invocation of his First Amendment rights to free speech and to petition the government as another basis for his second claim is understood to relate to his allegation that defendant Selksy denied plaintiff's appeal from the July 24, 2002 disciplinary determination in retaliation for his sending a letter to defendant Goord criticizing certain statements Goord had made in a DOCS newsletter. (Compl. P. 6).

It is well established that prison officials may not retaliate against inmates for exercising their constitutional rights. See, e.g., Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988).  To state a retaliation claim

13

under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000) (internal quotation and citation omitted). As to the second prong, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. See Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. See Colon, 58 F.3d at 872-73.

Because claims of retaliation are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," Colon, 58 F.3d at 872, requiring "'detailed fact pleading . . . to withstand a motion to dismiss.'" Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (quoting Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir. 1981)). To survive a motion to dismiss, such claims must be "'supported by specific and detailed factual allegations,'" and should not be stated "'in wholly conclusory terms.'" Friedl, 210 F.3d at 85-86 (quoting Flaherty, 713 F.2d at 13); see also Graham, 89 F.3d at 79 (wholly conclusory claims of retaliation "can be dismissed on the pleadings alone"); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (same).

Moreover, only those retaliatory acts that are likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment are actionable under § 1983; in other words, allegations of de minimis acts of retaliation do not

state a claim under § 1983.  Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999)

(cited with approval in Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)).  See Davidson

v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999) (on remand, district court must consider the

"serious question" of "whether the alleged acts of retaliation . . . were more than *de*

*minimis*" in deciding summary judgment motion).  A *de minimis* retaliatory act is outside the

ambit of constitutional protection.  Dawes, 239 F.3d at 492.

There is nothing in plaintiff's complaint to support his claim that his appeal from

July 24, 2002 was denied in retaliation for his having sent a complaint to defendant Goord

beyond: (1) the temporal proximity between his filing of his complaint and the denial of his

appeal and (2) his recital of an accusation of retaliation that he leveled against Goord and

Selsky in a second letter that he sent to Goord following the denial of his appeal.  Plaintiff

fails, however, to point to anything said or otherwise communicated to him by Goord or

Selsky or by any other prison official or employee that supports his claim that defendants'

denial of his appeal was intended to retaliate against him for exercising his First

Amendment rights. The Court therefore finds that plaintiff's claim of retaliation is wholly

conclusory and therefore that his First Amendment claims (free speech, right to petition)

should be dismissed. Further, the Court finds nothing in plaintiff's statement of his first and

second claims that would support his allegation that defendants Goord and Selsky violated

his equal protection rights, and those claims must likewise be dismissed.

### 2. Claims Alleging Deprivation of Religious Freedom (Third and Fourth Claims)

Plaintiff's third and fourth claims principally allege that prison officials took actions

that had the effect of depriving him of his right to freely exercise his religious beliefs.

Plaintiff's third claim alleges that Jewish inmates like himself were subjected at Southport to certain delays and restrictions on their right to be fed food prepared in accordance with the prescribed kosher rules.  Specifically, he asserts that only Jewish inmates were forced to wait ten to twenty days after their arrival at Southport before being provided with a kosher diet, disciplined for giving away food they do not eat or want and denied meat alternatives for meat items on the kosher menu.  (Compl. p. 8).  Curiously, plaintiff's complaint does not identify the officials or employees at Southport who were responsible for such alleged discriminatory treatment of Jewish inmates.  Instead, his third claim focuses on the alleged failure of supervisory personnel to take favorable action in response to the grievances and letters plaintiff submitted to them in which he complained about the facility's "discriminatory policies and practices."  He alleges that in February, 2004 he filed a grievance complaining about religious discrimination, but that acting Superintendent Chappius and Superintendent McGinnis upheld the denial of the grievance, as did defendant Eagan, the director of the DOCS Inmate Grievance Program, to whom plaintiff subsequently appealed.[6]

As previously noted in connection with the Court's assessment of plaintiff's disciplinary hearing claims, personal involvement of a defendant in an alleged Constitutional violation is a prerequisite for liability under § 1983.  Here, plaintiff does not allege that defendants Goord, Eagan, McGinnis and Chappius were personally involved in the alleged deprivations of plaintiff's free exercise rights.  Instead, plaintiff seeks to sue

---

[6]Plaintiff attaches to his complaint copies of the relevant decisions denying his grievances, which the Court has reviewed.

them because of their refusal to reverse the denial of his grievance. As previously noted, the fact that a prison official in the prison "chain of command" affirms the denial of an inmate's grievance is not enough to establish the requisite personal involvement of that official. Page v. Breslin, 02-CV-6030, 2004 U.S. Dist. LEXIS 25056, at *21-22 (E.D.N.Y. 2004); Foreman v. Goord, 02 Civ. 7089, 2004 U.S. Dist. LEXIS, at *21-22 (S.D.N.Y. 2004); Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002); Villante v. N.Y. State Dep't of Corr. Servs., 96-CV-1484, 2001 U.S. Dist. LEXIS 25208, at *17 (N.D.N.Y. 2001). This point was well-stated in Joyner v. Greiner, in which the Court dismissed a former inmate's Eighth Amendment claim against the Superintendent of the Sing Sing Correctional Facility which was premised upon the Superintendent's denial of a grievance the inmate had filed with respect to the medical treatment he had received:

> The fact that Superintendent Greiner affirmed the denial of
> plaintiff's grievance – which is all that is alleged against him –
> is insufficient to establish personal involvement or to shed any
> light on the critical issue of supervisory liability, and more
> particularly, knowledge on the part of the defendant.

195 F. Supp. 2d at 506 (internal quotation marks and citation omitted).

This principle applies to superintendents, commissioners, and other prison officials who are in the chain of command with respect to the grievance review process. See, e.g., Breslin, 2004 U.S. Dist. LEXIS at *21-22 (dismissing claim against superintendent based upon "mere affirmation of grievance denial"); Foreman, 2004 U.S. Dist. LEXIS at *21-22 (dismissing claims against Commissioner and prison superintendent).

Accordingly, the Court determines that plaintiff's claims against defendants Goord, Eagen, McGinnis, and Chappius alleging violations of his freedom of religion, due process

and equal protection rights, as set forth in the "third claim" of his complaint, must be dismissed in their entirety for failure to allege the requisite personal involvement by the defendants.

Plaintiff's fourth claim also relates to the alleged deprivation by prison officials of kosher food, but other things are added to a create convoluted assortment of allegations. Specifically, plaintiff asserts that his rights to free speech and to petition were interfered with, and that he was subjected to malicious prosecution and discrimination.

Plaintiff's fourth claim alleges that in retaliation for having provided a statement supporting a fellow Jewish inmate who had been involved in a dispute with defendant C.O. Clark, Clark advised plaintiff that he was being removed from the kosher meal program. Plaintiff asserts that this retaliatory denial of kosher food, which began on July 29, 2004, continued for about a month thereafter, ending (on September 4, 2004) after plaintiff had filed grievances with respect to the defendants' actions in connection with plaintiff's exclusion from kosher meals, and related retaliatory actions allegedly undertaken by several of the defendants.[7]   Plaintiff claims that defendant Held initially ordered him removed from the kosher meal program, and that defendant Irizarry subsequently sent plaintiff a letter advising him that he was being removed from the kosher meal "for allegedly violating a facility rule."

---

[7]Several of the memoranda and grievance decisions by DOCS officials attached to the complaint indicate that plaintiff had been removed from the "Cold Alternative Meal Program" as a result of "program violations" by the plaintiff (specifically, that plaintiff was giving away or trading his food) and not in retaliation for something plaintiff had done.

Plaintiff then chronicles his attempts to appeal defendant Irizarry's determination, initially to defendant McGinnis. He alleges that McGinnis was advised by the facility Rabbi that Irizarry's actions violated plaintiff's religious dietary laws, and that he should immediately be returned to the kosher meal program, but McGinnis disregarded the Rabbi's advice and upheld Irizarry's determination.   Thereafter plaintiff appealed McGinnis's affirmation of Irizarry's decision to defendant Goord. However, following the resumption of plaintiff's kosher meals on September 4, 2004, defendant DOCS deputy Commissioner Nuttal, responding on behalf of Goord, informed plaintiff that the issue was "closed," and that no actions would be taken in response to the issues raised in plaintiff's complaints and appeals. Two additional grievances subsequently filed by plaintiff were, he claims, likewise ignored.

The Court finds that plaintiff's allegations are sufficient to allow his fourth claim asserting violations of his free exercise, right to petition, due process, and equal protection rights to proceed against defendants Klatt, Clark, Held, Irizarry, McGinnis, and Sheahan[8].

The Court further finds, however, that plaintiff's fourth claim must be dismissed with respect to defendants Goord, Nuttal, Cieslak and Eagan. Plaintiff's allegations against these defendants with respect to his fourth claim are based upon the fact that they refused to reverse the denial of several grievances filed by plaintiff with respect to his claims of

---

[8]While the allegations in plaintiff's fourth claim against defendants McGinnis and Sheahan would appear to be essentially based upon their denial of plaintiff's appeal of defendant Irizarry's decision to remove plaintiff from the kosher food program, and might therefore be dismissed for failure to allege those defendant's personal involvement in the violation of plaintiff's constitutional rights (see discussion set forth in the Court's dismissal of plaintiff's third claim supra), the Court finds that plaintiff's allegation that the facility Rabbi spoke to defendant McGinnis, but McGinnis disregarded his advice sufficiently alleges personal involvement against defendant McGinnis (and by extension, defendant Sheahan, who plaintiff alleges acted in concert with McGinnis) to allow plaintiff's fourth claim against McGinnis and Sheahan to go forward.

religious discrimination and denial of due process.  As explained by the Court in addressing plaintiff's third claim, supra, the mere fact that a prison official in the prison "chain of command" has occasion to pass upon a prisoner's grievance is not sufficient to establish requisite personal involvement in an alleged denial of a plaintiff's constitutional rights. See, e.g., Joyner v. Greiner, 195 F. Supp. at 506.  Similarly, the fact that plaintiff also sent letters to defendant Goord "pleading for him to take corrective actions," but that Commissioner Goord and Deputy Commissioner Nuttall took no corrective action in response to his missives is not sufficient to hold Goord or Nuttal liable under § 1983. See Sealey, 116 F.3d at 51.

Plaintiff also asserts in his fourth claim that he was the victim of malicious prosecution and failure to protect, but the complaint does not allege the predicate facts necessary to support these allegations, and they are accordingly dismissed against all defendants.

### 3. Claim of Denial of Access to Court and Right to Petition (Fifth Claim)

Plaintiff's fifth claim asserts that his rights to petition for redress of grievances and for access to the Courts were interfered with when defendants Ames and Litwilder, in February/March 2004, confiscated all of his writing paper and carbon paper, denied him law library materials, would not allow him to use a stapler, and refused to allow him to have his briefs and affidavits in a state court case to be bound in accordance with the rules of the New York State Supreme Court, Second Judicial Department, causing his papers to be rejected.  Plaintiff filed grievances with respect to these alleged interferences with his

rights, but his grievances were denied or ignored by defendants Bartlett, Hale, and Cieslak, as were his ensuing appeals to defendants McGinnis, Chapius and Eagan.

Plaintiff's allegations that the denial of his access to materials necessary to prepare or perfect his grievances and lawsuits materially prejudiced his ability to pursue such grievances and legal actions are sufficient to state a claim that his right of access to the courts was unconstitutionally hindered. Ramsey v. Coughlin, No. 94-CV-9S(F), 1 F. Supp. 2d 198, 204-205 (W.D.N.Y. 1998) (Magistrate's Report and Recommendation). Plaintiff's fifth claim will therefore be allowed to proceed against defendants Ames and Litwilder.

However, plaintiff's fifth claim must be dismissed with respect to defendants Bartlett, Hale, Cieslak, McGinnis, Capius and Eagan. With respect to these defendants, plaintiff's allegations fail to allege the requisite personal involvement. As previously noted, the fact that defendants failed to respond to plaintiff's letters or, as links in the prison system "chain of command," affirmed the denial or dismissal of plaintiff's grievances, is not sufficient to establish their liability under Section 1983. See, e.g., Page v. Breslin, 2004 U.S. Dist. LEXIS at *21-22; Foreman v. Goord, 2004 U.S. Dist. LEXIS, at 19-22; Joyner v. Greiner, 195 F. Supp. 2d at 15.

## CONCLUSION

In accordance with the foregoing, the Court determines that:

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed in forma pauperis is granted.

All claims against defendants Goord, Selsky, Eagan, Chappius, Nuttal, Cieslak, Bartlett, and Hale are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

Plaintiff's malicious prosecution claim as set forth in the "first claim" of his complaint is dismissed as to all defendants enumerated therein.

Plaintiff's free exercise of religion, due process, equal protection/discrimination claims set forth in the "third claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's malicious prosecution and failure to protect claims set forth in the "fourth claim" of his complaint are dismissed as to all defendants enumerated therein.

Plaintiff's due process claim set forth in the "first claim" of his complaint survives as to defendant Ryerson.

Plaintiff's free exercise of religion, right to petition, due process, and equal protection claims set forth in the "fourth claim" of his complaint survive as to defendants Klatt, Clark, Held, Irizarry, McGinnis and Sheahan.

Plaintiff's access to court, right to petition, and due process claims set forth in the "fifth claim" of his complaint survive as to defendants Ames and Litwilder.

The U.S. Marshal is directed to serve the summons, complaint and this Order on defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder regarding the claims against those defendants which survive, as enumerated above.

## ORDER

IT HEREBY IS ORDERED that plaintiff's claims against defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to terminate as parties to this action defendants Selsky, Goord, Eagan, Chappius, Nuttal, Cieslak, Bartlett and Hale;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the summons, complaint and this Order upon defendants Ryerson, Klatt, Clark, Held, Irizarry, McGinnis, Sheahan, Ames and Litwilder without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.


SO ORDERED.


DATED:     Buffalo, New York
           8 / 13 , 2005

                                    WILLIAM M. SKRETNY
                                    United States District Judge

23